## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

EARL D. JOHNSON, JR.                      *

Plaintiff,                                *

v.                                        *          Civil Action No. JKB-24-2277

CORIZON HEALTH CARE, and                  *
P.A. CRYSTAL JAMISON,
                                          *
Defendants.

                                        ***

### MEMORANDUM OPINION

Plaintiff Earl D. Johnson, Jr. filed this civil rights action, as amended, asserting that his

health has been jeopardized due to Defendants' failure to provide him treatment for right knee pain

while he was incarcerated at Roxbury Correctional Institution ("RCI"). (ECF Nos. 1, 5 and 8.)[1]

In response, Defendant P.A. Crystal Jamison filed a Motion to Dismiss. (ECF No. 19.)  Johnson

was advised of his right to file an opposition response (ECF No. 20) and did so (ECF No. 21).  The

Court finds that the matter has been fully briefed, and a hearing in this matter is unnecessary. *See*

Local Rule 105.6. (D. Md. 2025).  For the reasons explained below, the Motion will be granted.

I.    **Background**

      A. **Plaintiff's Allegations**

In his Amended Complaint, Johnson names as Defendants Corizon Health Care[2] and P.A.

Crystal Jamison. (ECF No. 8 at 1.)  He alleges that in March of 2023, he suffered pain in his right

knee. (ECF Nos. 8 at 4.).  He went to the medical department and was given a cane and feed-in

---

[1] Johnson's Amended Complaint (ECF No. 8) was previously deemed to be the operative Complaint. (*See* ECF No. 14.)

[2] The case has been stayed as to Corizon Health Care due to their bankruptcy. (ECF No. 14.)

status and told he would see a doctor. Johnson alleges that Defendant Jamison told him "it[']s no bone damage [and] put [him] on ibuprofen . . . " (*Id.*) He also states that nothing was done when his prescription ran out. (*Id.* at 5.) Johnson states that he has been in pain every day and has not seen a doctor or had an MRI. (*Id.* at 4.) He also alleges that the wrong knee brace was given to him and that unidentified "Corizon employee failed to treat [his] right knee no MRI." (*Id.* at 5.) He seeks compensatory damages and for the court to order an MRI. (*Id.*)

Johnson attached excerpts of his medical records and grievances to his Amended Complaint. (ECF No. 8-1.) Those documents demonstrate that on March 3, 2023, Johnson was seen by RN Diaz for a nurse sick call due to his complaint of continued knee pain. (ECF Nos. 8-1 at 13–14, 16.) He requested to see a doctor and to be provided Salonpas. (*Id.* at 13.) It was noted that he had been seen five days earlier for right knee pain and was provided an ace wrap and ibuprofen. (*Id.* at 14.) He was referred to a provider, given Aspercreme and ibuprofen, and directed to continue using the ace wrap. (*Id.* at 15.)

On March 21, 2023, Johnson was evaluated by NP Sebuliba due to his complaint of right knee pain. (ECF No. 8-1 at 17–19.) NP Sebuliba noted that the pain started two weeks earlier and was aggravated by walking and standing. (*Id.* at 17.) Johnson reported that he had borrowed a knee brace from a friend, but that it did not provide much relief. He was provided a cane and feed-in status until X-rays and follow up with a provider could occur. (*Id.*) He was provided ibuprofen, Aspercreme, and a knee brace, and X-rays were ordered. (*Id.* at 19.) On March 25, 2023, he received the knee brace. (*Id.* at 20.)

On March 28, 2023, Johnson was seen by RN Knoll for a sick call and inquired about the X-ray order. (EC No. 8-1 at 21–22.) He advised that he saw PA Jamison the day before, and she put in an X-ray request and provided him a cane and feed-in until the issue was resolved. (*Id.* at

2

21.) The nurse sent emails to the X-ray technician inquiring about the schedule and to the scheduler requesting Johnson be scheduled for follow up once the X-ray was taken. (*Id.* at 22.) The nurse noted that Johnson was ambulatory with use of the cane, and that he had active prescriptions for Aspercreme and ibuprofen. (*Id.*)

On March 30, 2023, Johnson filed a sick call slip seeking a medication refill and stating that he had a problem with his knee and needed to "see what up with it." (ECF No. 8-1 at 8.)

On April 5, 2023, X-rays were taken which showed no evidence of fracture, loose bodies, supra-patellar effusion, or soft tissue swelling. (ECF No. 8-1 at 29.) It was recommended that if his pain was persistent or a radiographically occult fracture was suspected, a follow up MRI or CT could be considered in 10 to 14 days. (*Id.*)

On April 7, 2023, Johnson was seen by PA Jamison for evaluation of his right knee pain. (ECF No. 8-1 at 23–25.) He reported a twisting injury several weeks earlier and offered that it was improving but that he had instability with movement. (*Id.* at 23.) He requested a more supportive knee brace. (*Id.*) He had active prescriptions for ibuprofen and Aspercreme. (*Id.* at 23–24.) A strapped patellar stabilizer was ordered, and Johnson was advised to continue his current treatment including use of the cane. (*Id.* at 24.) Jamison noted that the physical exam was negative for ligamentous laxity. (*Id.*)

On April 25, 2023, Johnson filed another sick call slip seeking medication refill and complaining that he had not received the knee brace that was ordered on April 7. (*Id.* at 9.) On May 4, 2023, Johnson filed a sick call slip stating that he could not stand long on his knee because his "MCL and LCL [are] damaged." (*Id.* at 10.) He asked for paperwork so that he could shower before they start recreation, and stated that he would have his lawyer file suit if he did not receive

3

the requested paperwork. (*Id.*) On June 1, 2023, Johnson filed another sick call complaining that he had not received the ordered knee brace and again threatening to sue. (*Id.* at 11.)

On June 11, 2023, RN Green saw Johnson due to his complaints that he had not received his knee brace. (ECF No. 8-1 at 26.) He was able to walk into the treatment room without distress. (*Id.*) Green contacted the nurse manager regarding the knee brace, and Johnson was updated and agreed to his plan of care. (*Id.* at 26.) Johnson was referred to a provider and was provided Aspercreme and ibuprofen. (*Id.* at 15.). He was directed to return if his symptoms did not subside. (*Id.*)

Johnson's June 23, 2023, sick call sought refill of his medications and stated he still had knee pain. (*Id.* a 12.)

### B. Defendants' Response

Defendant Jamison asserts that Johnson has failed to state a claim, she is entitled to qualified immunity, and that Johnson has failed to satisfy conditions precedent for his state medical malpractice claim. (ECF No. 19-1.)

### II.    Standard of Review

To survive a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6), the factual allegations of a complaint "must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations omitted). "To satisfy this standard, a plaintiff need not 'forecast' evidence sufficient to prove the elements of the claim. However, the complaint must allege sufficient facts to establish those elements." *Walters v. McMahen*, 684 F.3d 435, 439 (4th Cir. 2012) (citation omitted). In reviewing a Rule 12(b)(6) motion, a court "must accept as true all of the factual allegations

4

contained in the complaint" and must "draw all reasonable inferences [from those facts] in favor

of the plaintiff." *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir.

2011) (citations omitted). The complaint must allege enough facts to state a plausible claim for

relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A claim is plausible when the facts pleaded

allow "the court to draw the reasonable inference that the defendant is liable for the misconduct

alleged." *Id.* Legal conclusions or conclusory statements do not suffice. *Id.* When deciding a

motion to dismiss under Rule 12(b)(6), the Court generally considers only the complaint and any

attached documents. *Sec'y of State for Def. v. Trimble Navigation Ltd.*, 484 F.3d 700, 705 (4th

Cir. 2007). A self-represented party's complaint must be construed liberally. *Erickson v. Pardus*,

551 U.S. 89, 94 (2007). However, "liberal construction does not mean overlooking the pleading

requirements under the Federal Rules of Civil Procedure." *Bing v. Brivo Sys., LLC*, 959 F.3d 605,

618 (4th Cir. 2020).

## III.    Analysis

### A. Personal Participation and Eighth Amendment

Liability under § 1983 attaches only upon personal participation by a defendant in the

constitutional violation. *Trulock v. Freeh*, 275 F.3d 391, 402 (4th Cir. 2001). It is well established

that the doctrine of respondeat superior does not apply in § 1983 claims. *See Love-Lane v. Martin*,

355 F.3d 766, 782 (4th Cir. 2004). Liability of supervisory officials "is not based on ordinary

principles of respondeat superior, but rather is premised on 'a recognition that supervisory

indifference or tacit authorization of subordinates' misconduct may be a causative factor in the

constitutional injuries they inflict on those committed to their care.'" *Baynard v. Malone*, 268

F.3d 228, 235 (4th Cir. 2001) (quoting *Slakan v. Porter*, 737 F.2d 368, 372 (4th Cir. 1984)).

Supervisory liability under § 1983 must be supported with evidence that: (1) the supervisor had

5

actual or constructive knowledge that his subordinate was engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury to citizens like the plaintiff; (2) the supervisor's response to the knowledge was so inadequate as to show deliberate indifference to or tacit authorization of the alleged offensive practices; and (3) there was an affirmative causal link between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff. *See Shaw v. Stroud*, 13 F.3d 791, 799 (4th Cir. 1994).

The Eighth Amendment protects prisoners from "cruel and unusual punishment" and prohibits "unnecessary and wanton infliction of pain" against inmates. *Gregg v. Georgia*, 428 U.S. 153, 173 (1976); *see Estelle v. Gamble*, 429 U.S. 97, 102–03 (1976); *Scinto v. Stansberry*, 841 F.3d 219, 225 (4th Cir. 2016). To state an Eighth Amendment claim for inadequate medical care, a plaintiff must demonstrate that the actions of the defendants or their failure to act amounted to deliberate indifference to a serious medical need. *See Estelle*, 429 U.S. at 106. Such deliberate indifference requires proof that, objectively, the prisoner plaintiff was suffering from a serious medical need and that, subjectively, the prison staff was aware of the need for medical attention but failed to either provide it or ensure the needed care was available. *See Iko v. Shreve*, 535 F.3d 225, 241 (4th Cir. 2008).

Objectively, the medical condition at issue must be serious. *Hudson v. McMillian*, 503 U.S. 1, 9 (1992). A medical condition is serious when it is "so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Iko*, 535 F.3d at 241 (citation omitted). As for the subjective component, "[a]n official is deliberately indifferent to an inmate's serious medical needs only when he or she subjectively knows of and disregards an excessive risk to inmate health or safety." *Jackson v. Lightsey*, 775 F.3d 170, 178 (4th Cir. 2014) (quoting *Farmer v. Brennan*, 511 U.S. 825, 837 (1994)). "[I]t is not enough that an official should have

6

known of a risk; he or she must have had actual subjective knowledge of both the inmate's serious medical condition and the excessive risk posed by the official's action or inaction." *Id.* (citations omitted). "[M]any acts or omissions that would constitute medical malpractice will not rise to the level of deliberate indifference." *Id.* "Deliberate indifference is more than mere negligence, but less than acts or omissions done for the very purpose of causing harm or with knowledge that harm will result." *Scinto*, 841 F.3d at 225 (internal alterations omitted). Under this standard, a mere disagreement between an inmate and a physician over the appropriate level of care does not establish an Eighth Amendment violation absent exceptional circumstances. *Id.* Moreover, even · if the requisite subjective knowledge is established, an official may avoid liability if the official "responded reasonably to the risk, even if the harm ultimately was not averted." *See Farmer*, 511 U.S. at 844.

A review of Johnson's allegations and the records attached to his Amended Complaint establishes that Johnson has not provided a sufficient basis to support his deliberate indifference claim against Defendant Jamison. Even assuming that Johnson has an objectively serious medical need, Johnson's Amended Complaint simply states that Jamison told him "it[']s no bone damage [and] put [him] on ibuprofen…" (ECF No. 8 at 4.) He complains that nothing was done when his prescription ran out (*Id.* at 5), but he does not attribute the failure to renew his prescription to Jamison, or even allege she was aware the prescription required renewal. Additionally, Johnson states that he has been in pain every day, has not seen a doctor or had an MRI, and was provided the wrong knee brace, but he fails to attribute the failure to order an MRI, treat his pain, refer him to a physician, or provide him the proper knee brace to Jamison.

Rather, Johnson provides copies of his medical records that demonstrate that on March 28, 2023, he advised RN Knoll he saw PA Jamison the day before and she put in an X-ray request and

7

provided him a cane and feed-in status. (ECF No. 8-1 at 21.)  On April 7, 2023, after the X-rays

were taken, Johnson was seen by PA Jamison. (*Id.* at 23–25.)  His X-rays did not show objective

evidence of injury.  (*Id.*)  Johnson had active analgesic medication prescriptions, and Jamison

ordered a strapped patellar stabilizer and directed Johnson to continue his current treatment

including use of the cane.  (*Id.* at 24.)  Johnson does not allege that any additional care was required

at that time.  Rather, he baldly claims that unidentified "Corizon employee failed to treat [his] right

knee no MRI."  (ECF No. 8-1 at 5.)  But he provides no explanation as to how Defendant Jamison

failed to provide adequate medical care.  The allegations and documents attached to the Complaint

reflect that Jamison evaluated him, ordered diagnostic testing and ambulatory aids, and saw that

he received analgesic medication.  Accordingly, Johnson fails to state an Eighth Amendment claim

against Jamison, and her motion is granted.[3]

### B. State Law Claims

Upon review of the Amended Complaint, the Court does not find that Johnson has alleged

a claim of medical negligence, or medical malpractice.  Even if he had, the Court agrees with

Defendant Jamison that any such claim would have to be dismissed without prejudice because

Johnson failed to comply with Maryland's Health Care Malpractice Claims Act ("HCMCA"), Md.

Code Ann., Cts. & Jud. Proc. §§ 3–2A–01 to 3–2A–10.  The HCMCA requires that before filing

a medical malpractice claim in court, a claimant must first file a claim with the Maryland Health

Care Alternative Dispute Resolution Office ("HCADRO"), an administrative body established by

the HCMCA. *See id.* § 3–2A–04(a)(1)(i).  Further, the claimant must submit to the HCADRO a

certificate of a qualified expert attesting to the health care provider's departure from the standard

of care and attesting such departure was the proximate cause of the alleged injury.  *Id.* § 3–2A–

---

[3] Having found no constitutional violation, the Court need not address Defendant's additional defenses.

04(b)(1)(i). If a claimant does not satisfy these requirements, any malpractice claim filed in court is subject to dismissal without prejudice. *Id.* § 3–2A–02; *see Wilcox v. Orellano*, 115 A.3d 621, 625 (Md. 2015). Because Johnson has not alleged or established that he complied with the requirements of the HCMCA, any medical malpractice claim would be dismissed without prejudice. *See* 28 U.S.C. § 1915(e)(2)(B)(ii) (requiring a court to dismiss a self-represented claim filed in forma pauperis if it fails to state a claim); *Rowland v. Patterson*, 882 F.2d 97, 97 (4th Cir. 1989) ("Maryland law requires medical malpractice claimants to exhaust an arbitration remedy provided by the state as a precondition to bringing any civil action on the claim in state or federal court."); *Lewis v. Waletzky*, 576 F. Supp. 2d 743, 735, 36, 738 (D. Md. 2008) (dismissing a malpractice claim asserted under Maryland law for failure to comply with the requirements of the Maryland Health Cate Malpractice Claim Act).

## C. Preliminary Injunction

To the extent Johnson's seeks preliminary injunctive relief, that request is denied. A party seeking a preliminary injunction or temporary restraining order must establish: (1) a likelihood of success on the merits; (2) a likelihood of suffering irreparable harm in the absence of preliminary relief; (3) that the balance of equities tips in the party's favor; and (4) why the injunction is in the public interest. *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). For the reasons discussed above, Johnson has failed to demonstrate a likelihood of success on the merits. Therefore, his request for injunctive relief is denied.

## IV. Conclusion

For the foregoing reasons, Defendant Jamison's Motion is granted. A separate Order follows.

Dated this 3/ day of July, 2025.

9

FOR THE COURT:

James K. Bredar
United States District Judge